THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EIDO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | CASE NO. C15-0203-JCC<br><br>ORDER |

This matter comes before the Court on Plaintiff Eido's appeal of the Administrative Law Judge's (ALJ) decision denying Eido's applications for Social Security benefits (Dkt. No. 9). Eido alleges two errors in the ALJ's decision: (1) the weight given to the various medical opinions and (2) the finding that Eido was not fully credible. (Dkt. No. 9 at 1.) Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby REVERSES and REMANDS this case for the reasons explained herein.

**I.　　BACKGROUND**

Eido had a traumatic childhood, suffering abuse at the hand of his father. AR 357-63. As a result, he developed depression and posttraumatic stress disorder (PTSD). AR 311, 315, 18. Eido asserts that these conditions cause him to be "easily triggered," leading to confrontations in the workplace. AR 311. In June 2013, he applied for Social Security benefits. AR 251-67. His applications were denied, and he requested a hearing before an ALJ. AR 140-46.

At the hearing, Eido testified that he could no longer work due to his difficulty focusing and his tendency to engage in workplace conflicts. AR 49, 58. According to Eido, sometimes his mind will "go blank," a symptom related to his childhood abuse. *See* AR 58. He testified that this caused him to be fired from his last job, as a cart pusher at Walmart, for failing to pay attention and hitting a car with a cart. AR 64. He further stated that he has "a trigger point where someone says something to me that sets me off," and as a result has been fired from multiple jobs for physical and verbal conflicts with coworkers and supervisors. AR 59, 60-64. He testified that two days before the hearing, while playing music for the City of Seattle, he "put a man in the hospital. I billy clubbed him. . . . I was just simply playing music and he got right in my face [and] then he put his hands on me. So I beat him until he wasn't touching me anymore." AR 55-56. Eido has had more than 30 jobs over the last 15 years. *See* AR 270-77.

The ALJ considered medical evidence, including (1) Eido's treatment and counseling records, AR 369-72, 381-85, 389-400, 421-53; (2) a psychiatric evaluation performed by Nurse Sonia Nikolova, AR 401-16; (3) a psychological/psychiatric evaluation performed by Dr. James Czysz, Psy. D., AR 373-80; (4) letters from Nurse Nikolova and Heather Morgan, Eido's mental health case manager, AR 420, 454; and (5) reports from agency psychologists who reviewed Eido's disability claims. AR 77-90, 91-104, 107-120, 121-134. Dr. Czysz, Nurse Nikolova, and Ms. Morgan opined that Eido's mental health conditions would seriously affect his ability to maintain a job, *see* AR 420, 454, 375, while the agency psychologists opined that Eido could work in an environment with limited and superficial contact with the public and unfamiliar individuals. *See* AR 100, 117.

Based on the evidence presented, the ALJ found that Eido suffered from two severe impairments: major depressive disorder and PTSD. AR 18. She concluded that Eido's residual functional capacity (RFC) was as follows:

> [Eido can] perform a full range of work at all exertional levels but with the following nonexertional limitations: He can have no contact with the general public. He can have occasional, brief and superficial contact with coworkers and

Case 2:15-cv-00203-JCC Document 12 Filed 10/13/15 Page 3 of 10

supervisors. He can adapt to simple changes in the workplace setting. He can understand, remember and carry out simple, routine tasks.

AR 24. As a result, the ALJ concluded that Eido was not disabled within the meaning of the Social Security Act (SSA). AR 19.

Eido seeks reversal of this decision. (Dkt. No. 9 at 1.)

## II. DISCUSSION

### A. Standard

In determining disability, the ALJ considers a five-step sequential evaluation process. The burden rests upon the claimant throughout the first four steps of this process to prove disability, and if the claimant is successful upon consideration of the first four steps, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920. The five steps are as follows:

(1) The claimant must prove that she is not currently engaged in substantial gainful activity;

(2) The claimant must prove her impairment is "severe" in that it "significantly limits her physical or mental ability to do basic work activities";

(3) The ALJ must determine whether the claimant's impairments meet or are medically equivalent to one of those listed at 20 C.F.R. Part 404, Subpart P, App'x 1. If so, the claimant is disabled under the SSA. If not, the evaluation proceeds;

(4) The claimant bears the burden of proving that she is incapable of meeting the physical and mental demands of her past relevant work; and, if she does,

(5) The burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education, and past work experience, that she is capable of performing other work. If the Commissioner proves that other work exists which the claimant can perform, the claimant is given the opportunity to rebut this evidence.

*Tackett*, 180 F.3d at 1098-99.

A district court may disturb the Commissioner's decision to deny Social Security benefits "only if it is not supported by substantial evidence or based on legal error." *Martinez v. Heckler*,

ORDER
PAGE - 3

807 F.2d 771, 772 (9th Cir. 1986). Substantial evidence is "more than a mere scintilla, but may be less than a preponderance." *Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001). Substantial evidence means "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion." *Id.* When the evidence before an ALJ is subject to multiple rational interpretations, this Court must defer to the ALJ's decision. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

### B.  Analysis

Eido makes two main challenges to the ALJ's decision. First, he argues that the ALJ failed to give legally sufficient reasons in support of her weighing of the medical opinions. (Dkt. No. 9 at 1.) Second, he argues that the ALJ failed to give specific, clear, and convincing reasons for finding Eido not fully credible. (Dkt. No. 9 at 1.)

The Court first addresses the weight given to the medical opinions. The ALJ gave little weight to the opinions of Dr. Czysz, Nurse Nikolova, and Ms. Morgan because they relied on subjective reporting from Eido, whom the ALJ had found not fully credible. AR 27-28. Instead, the ALJ gave significant weight to the opinion of agency psychologist Dr. Thomas Clifford, Ph.D, "because he had the opportunity to review the claimant's medical records before opining on his workplace restrictions." AR 27. She further noted that Dr. Clifford's opinion was affirmed by agency psychologist Dr. Leslie Postovoit, Ph.D, who reviewed Eido's supplemented records on reconsideration. AR 27; *see also* AR 107, 117.

Generally, an examining physician's opinion is entitled to greater weight than a nonexamining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 831. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of [an] examining physician." *Id.* In other words, if a nonexamining physician relies on the same clinical findings as the examining physician, but

differs only in his or her conclusions, the conclusions of the nonexamining physician are not "substantial evidence." *See Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

Here, the ALJ's assertion that Drs. Clifford and Postovoit had additional evidence is misleading. Dr. Clifford's report shows that he relied on the following sources: (1) a report from Gary Gaffield, Doctor of Osteopathic Medicine, which addressed Eido's diabetes; (2) a financial report provided by Nadine Sisson, Eido's sister; (3) Dr. Czysz's report; (4) Eido's financial report and work history; and (5) a Community Health Center report regarding Eido's physical condition, primarily his diabetes. AR 78-79; *see also* AR 381-85, 369-72. Among these sources, the only evidence relevant to Eido's mental health is Dr. Czysz's report. Thus, Dr. Clifford relied not only on the same evidence as Dr. Czysz, but on the evidence *as described by* Dr. Czysz. Thus, the ALJ's reason for giving more weight to Dr. Clifford's opinion than Dr. Czysz's is not legitimate.

The fact that Dr. Postovoit affirmed Dr. Clifford's conclusion does not remedy this error. On reconsideration, Dr. Postovoit reviewed two additional sources: (1) treatment records from Downtown Emergency Service Center (DESC) and (2) treatment records from Neighborcare Health Administrative Office (NHAO). *See* AR 108-10, 401-16, 421-53, 389-400. The DESC records describe counseling sessions conducted almost entirely by Nurse Nikolova and Ms. Morgan. *See* AR 401-16, 421-53. The two DESC reports prepared by another counselor were likewise based on Eido's subjective reports, a practice criticized by the ALJ. *See* AR 447-53. Thus, the only relevant additional evidence available to the agency psychologists were the NHAO records. Regarding Eido's mental state, these records note only that Eido suffers from PTSD and depression—conclusions not at issue here—and that, during Eido's two office visits, Eido was "[a]lert and oriented. No unusual anxiety or evidence of depression." AR 393, 394, 396, 397, 398. The observations about Eido's affect are not wholly inconsistent with those made by Dr. Czysz, Nurse Nikolova, and Ms. Morgan, who noted that Eido was cooperative and had a linear thought process and an oriented mental state during their visits. *See* AR 376-77, 401, 408-

09. The NHAO records differ from the examining source records in that they described Eido as not unusually anxious or depressed; by contrast, Dr. Czysz observed that Eido was "quite anxious with poorly developed social skills" and Nurse Nikolova noted that Eido was "anxious, irritable." AR 376, 429. To the extent the NHAO records add anything different, this Court sees no principled reason for rejecting the examining sources' direct observations in favor of the agency psychologist's secondhand review of another person's observations. In sum, the ALJ did not provide legitimate reasons for weighing the medical opinions as she did.

The Court now turns to the ALJ's dismissal of the examining source opinions. An ALJ can only reject a treating or examining source opinion "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31. It is well established that an ALJ may not substitute her opinion for that of a competent medical expert. *See, e.g.*, *Day v. Weinburg*, 522 F.2d 1154, 1156 (9th Cir. 1975); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Balsamo v. Chater*, 142 F.3d 75, 81 (2nd Cir. 1998); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).

As noted above, the ALJ gave little weight to the opinions of Dr. Czysz, Nurse Nikolova, and Ms. Morgan primarily because they relied on Eido's subjective statements.[1] *See* AR 27-28. The ALJ further stated that "it is evident from the medical records and [Eido's] statements regarding his activities of daily living that he is capable of performing far more than he alleges." AR 28.

---

[1] The ALJ also gave Nurse Nikolova's opinion little weight because, as a nurse, she was not an acceptable medical source. AR 27. However, opinions from other sources such as nurse practitioners "are important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06-03P. The issue here is not Eido's diagnosis, but the extent to which his condition affects his functioning. Nurse Nikolova's opinion should be considered on this point. The same is true for the opinion of Ms. Morgan as Eido's mental health case manager. *See* SSR 06-03P ("'Non-medical sources' who have had contact with the individual in their professional capacity, such as teachers, school counselors, and social welfare agency personnel who are not health care providers, are also valuable sources of evidence for assessing impairment severity and functioning.").

Thus, this Court's review of the examining source evidence requires concurrent review of Eido's credibility. When determining whether a claimant's testimony regarding subjective symptoms is credible, the ALJ must first determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). If the claimant does so, and if there is no evidence of malingering, the ALJ may reject the claimant's testimony only by offering specific, clear, and convincing reasons to do so. *Id.* at 1036.

Here, the ALJ found that Eido's medical impairment could reasonably be expected to cause his alleged symptoms, but that Eido's statements about the intensity, persistence, and limiting effects of the symptoms were not entirely credible. AR 25. This was so, the ALJ reasoned, because the objective evidence demonstrated that Eido's cognitive limitations and trouble interacting with others were not as severe as he alleged. *See* AR 25-26. Specifically, she noted that, during counseling sessions and exams, Eido was alert, pleasant, and socially appropriate; demonstrated intact memory and a good fund of knowledge; reported satisfaction with his life and denied suicidal ideation; and demonstrated a logical and coherent thought process. AR 25-26.

As a preliminary matter, the Court finds it curious that the ALJ would disparage a mental health professional for relying on subjective reporting about a mental health condition. While some symptoms of mental illness display themselves outwardly, others do not, or would not in a therapeutic or medical environment. Here, Eido reported symptoms in times of stress or confrontation. That he was not triggered in a supportive environment such as counseling should not diminish his credibility. *Cf. Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (claimant's cognitive functioning during therapy did not contradict his reported symptoms of depression and social anxiety).

Moreover, there is other objective evidence that complicates the picture. For example, Dr. Czysz described Eido as "quite anxious with poorly developed social skills," citing an incident

wherein Eido pulled up his shirt, exposing his whole torso and revealing to Dr. Czysz a potentially offensive tattoo. *See* AR 376. In addition, Nurse Nikolova observed Eido having difficulty sitting still and being anxious, irritable, or distractible. AR 429, 401.  And, Ms. Morgan reported that Eido "appeared a bit guarded and sad when I mentioned trauma" and was "anxious and dysthymic,[2] appeared visibly shaken by his memories of his father and his current symptoms." AR 413, 425. These were objective observations that were consistent with Eido's reported symptoms. The ALJ cannot "improperly cherry-pick" certain evidence and ignore the rest. *See Ghanim*, 763 F.3d at 1164; *Lingenfelter*, 504 F.3d at 1035.

Furthermore, the ALJ's characterization of other evidence is dubious. For example, the ALJ wrote that Eido "reported he gets along with authority figures well." AR 26. But, the report she cited states that "[a]ny dominant/authority figure makes me zone out due reasons for [sic] my PTSD," and that Eido "one time got in a fight with landlord [sic], sometimes I've had trouble with bosses due to being triggered." AR 316-17. The ALJ also reasoned that Eido's cognitive functioning was better than he reported because he could "focus his attention on drawing, painting and making music for extended periods." *See* AR 26-27. But, Eido reported a loss of focus when he was faced with a triggering situation. AR 58. By contrast, art was a coping mechanism for Eido; it gave him "solace and meaning." *See* AR 401, 424. In sum, the objective evidence does not constitute a convincing reason to discredit Eido or to deem his reports improper support for a medical opinion.[3]

---

[2] Dysthymia is a mild but chronic form of depression. *See* "Less severe disorders – Dysthymia," 6 ATTORNEYS MEDICAL ADVISOR § 49:15.

[3] Nor were certain other reasons given by the ALJ for finding him less than credible. For example, she noted that Eido gave inconsistent accounts about the frequency of his marijuana use, testifying at the hearing that he used marijuana daily, but reporting to Dr. Czysz that his use was "intermittent." AR 27. However, this discrepancy was not severe nor is there evidence that it impacted Dr. Czysz's evaluation. *See* AR 374.

The ALJ also observed that Eido refused to take antidepressants, despite the reported severity of his symptoms. AR 26, 27. There is conflicting case law in this circuit as to whether lack of treatment for a mental condition is a proper consideration regarding credibility. In *Burch*

Additionally, the examining sources acknowledged the evidence that the ALJ deemed inconsistent (Eido's friendly affect in therapy, ability to focus, etc.). *See* AR 376-77, 424, 426-27, 404, 409. In light of evidence as a whole, one can infer that the examining sources did not consider Eido's presentation in examinations and therapy to be determinative of his mental health. The ALJ must not substitute her own interpretation of the evidence for that of a competent medical expert. *Day*, 522 F.2d at 1156. Here, there was not "substantial evidence" warranting rejection of the examining source opinions. *See Lester*, 81 F.3d at 830-31.

As a final matter, the ALJ noted that Eido gave inconsistent accounts about experiencing hallucinations, denying them in counseling, but telling Dr. Czysz that he has auditory hallucinations "when he is particularly depressed." AR 27, 429, 374. This is potentially troubling, as it impacted Dr. Czysz's conclusion regarding the severity of Eido's condition. *See* AR 374, 377. This is an issue that should be fleshed out on remand.

## III. CONCLUSION

For the foregoing reasons, the final decision of the Commissioner is REVERSED and this case is REMANDED for further administrative proceedings consistent with this order.

//

//

---

*v. Barnhart*, 40 F.3d 676, 681 (9th Cir. 2005), the Ninth Circuit held that the ALJ was permitted to consider the claimant's lack of treatment for depression and fatigue in assessing her credibility. By contrast, in *Nguyen v. Chater*, 100 F.3d 1462, 1464-65 (9th Cir. 1996), the Ninth Circuit criticized this consideration, stating that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Id.* at 1465 (internal quotations omitted). This Court finds the approach in *Nguyen* more appropriate here. Eido refused antidepressants because he was afraid that the chemicals would "alter [his] brain" and because he wanted to work through his PTSD "as natural as possible." AR 50. It is not unheard of for patients to be skeptical of antidepressant medication or to opt for natural medical treatment. *Cf.* Eugene Kontorovich, "The Mitigation of Emotional Distress Damages," 68 U. CHI. L. REV. 491, 509-510 ("Antidepressants, anti-psychotics, and other psychotropic drugs have powerful, and often unpleasant, side effects. . . . [T]he side effects express themselves in the mind and mood of the patient, and thus can be seen as greater usurpations of autonomy."). This personal choice should not impact Eido's credibility as to the severity of his mental condition.

ORDER
PAGE - 9

1   DATED this 13 day of October 2015.

2

3

4

5

6

7
John C. Coughenour
8
UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER
PAGE - 10